**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| | : | |
| STACEY LYNNE GRIFFIN, | : | |
| | : | Bankruptcy No. 21-12777-AMC |
| DEBTOR | : | |
| _____ | : | |

## ORDER

AND NOW, this 17th day of January 2023, upon consideration of the objection of Stacey Lynne Griffin ("Debtor") to proof of claim 2-2 filed by Bank OZK, the Court hereby finds as follows:

1. On October 8, 2021, the Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code. Case No. 21-12777 ECF No. ("ECF") 1. The deadline for filing proofs of claim was set for December 17, 2021. *Id.* at ECF 13.

2. On October 22, 2021, Debtor filed an initial Chapter 13 plan ("Plan") which proposed to, *inter alia,* surrender to Bank OZK the 2017 Jayco RV 29ME ("Vehicle") securing its claim. *Id.* at ECF 10.

3. On October 29, 2021, Bank OZK filed proof of claim 2-1 ("POC 2-1") asserting a claim in the amount of $66,910.71 based on "[m]oney loaned" ("Claim 2-1"). *See* Claims Register. POC 2-1 also asserted that Claim 2-1 was secured by the Vehicle and perfected by the "certificate of title." *See id.* POC 2-1 left blank the space on the proof of claim form for indicating the value of the collateral. *See id.* Attached to POC 2-1 was the original "Retail Installment Contract And Security Agreement" dated October 17, 2019 ("Contract") pursuant to which Debtor financed the purchase of the Vehicle.[1] *Id.* POC 2-

---

[1] Pursuant to the Contract, and concurrent with its execution, the original seller-creditor, Fretz Enterprises, Inc., assigned the Contract to Bank OZK.

1

1 also attached a document titled "Electronic Title Copy" identifying Bank OZK as lienholder against the Vehicle. *Id.*

4. On November 5, 2021, Bank OZK filed a motion for relief from the automatic stay ("Stay Relief Motion"), alleging that Debtor had made no payments to Bank OZK pursuant to the Contract since August 16, 2021, and that according to JD Power, as of October 27, 2021, the estimated wholesale trade-in value of the Vehicle was $62,350, suggesting the Debtor did not have equity in the Vehicle. Case No. 21-12777 at ECF 18 ¶¶ 11, 12, 13, 14, 15, 18. The Debtor did not file an objection to the Stay Relief Motion.

5. On November 30, 2021, the Court entered an order granting the Stay Relief Motion ("Stay Relief Order"), thereby permitting Bank OZK to "immediately take any action permissible under state law to take possession of and title to the [Vehicle], including by accepting the immediate surrender from debtor of the [Vehicle]." *Id.* at ECF 23.

6. On April 26, 2022, the Court entered an order confirming an amended version of the Debtor's proposed Chapter 13 plan ("Amended Plan"). *Id.* at ECF 46. The Amended Plan still provided that Debtor would surrender the Vehicle to Bank OZK, and provided that Debtor has non-exempt property valued at $66,154.50 for purposes of 11 U.S.C. §1325(a)(4), and that $45,475.94 was to be distributed to priority and general unsecured creditors to pay 100% of their claims. *Id.* at ECF 39.

7. Subsequently, on October 6, 2022, Bank OZK filed proof of claim 2-2 ("POC 2-2"), which it characterized as an amendment to POC 2-1, asserting a general unsecured claim in the amount of $12,734.65 ("Claim 2-2") representing the deficiency balance from the sale of the Vehicle. *See* Claims Register. POC 2-2 attached the same Contract as attached to POC 2-1. *Id.* It also attached a document explaining how Bank OZK arrived at the

deficiency balance and the auction statement from the sale of the Vehicle reflecting that the closing date for the sale had been May 4, 2022. *Id.*

8. On November 3, 2022, Debtor filed an objection to Claim 2-2 ("Objection"), arguing that POC 2-2 asserted an entirely new matter, and citing *In re Hibble,* 371 B.R. 730, 737-38 (Bankr. E.D. Pa. 2007) in support of her position that a claim for a deficiency resulting from disposition of collateral asserts an entirely new matter. Case No. 21-12777 ECF 50 ¶ 6.

9. Generally, amendments to timely proofs of claim are to be liberally allowed absent prejudice to the debtor or other equitable reasons. *Washington v. SN Servicing Corp. (In re Washington)*, 420 B.R. 643, 645 (Bankr. W.D. Pa. 2009). When the claim amendment is filed after the bar date has passed, it will only be timely if it relates back to the date the original proof of claim was filed. *Id.* Relation back will not be permitted if the amendment actually states a new claim. *Id.*

10. An amended claim relates back to the date of the original claim if the substance of the amendment concerns the same transaction as the original claim. *Slobodian v. Capital for Merchants, LLC (In re ABS Ventures, Inc.)*, 523 B.R. 443, 447-48 (Bankr. M.D. Pa. 2014). Stated another way, an amendment will be considered to state a "new" claim if the original claim fails to give the debtor fair notice of the conduct, transaction, or occurrence from which the amended claim arises. *In re Washington*, 420 B.R. at 646. If the amendment simply cures a defect in the original claim, sets the claim forth in more detail, pleads a new theory of recovery on the same facts, or increases damages, it will not constitute a new claim and relation back may be permitted. *Id.*

11. "The majority of bankruptcy courts addressing the issue have held that an amended claim filed to assert an unsecured deficiency when collateral has been liquidated after the bar date for filing claims is not a new claim." *Slobodian,* 523 B.R. at 448. Thus, "[c]ourts have permitted creditors to amend their claims to assert an unsecured deficiency claim if the claim arises from the same transaction as the secured claim and if allowance of the amendment is not inequitable." *Id.*

12. Other courts, including *In re Hibble,* 371 B.R. 730 (Bankr. E.D. Pa. 2007), the case relied upon by the Debtor in support of the Objection, have held that an amended proof of claim that seeks to assert an unsecured deficiency claim after the liquidation of the creditor's collateral constitutes a new claim that cannot be asserted after the bar date. *In re Breaux*, 410 B.R. 236, 239 (Bankr. W.D. La. 2009) (citing *In re McBride,* 337 B.R. 451, 460 (Bankr. N.D. N.Y. 2006)). These courts tend to reason that a deficiency claim cannot arise out of the same conduct, transaction, or occurrence set forth in the original proof of claim unless the creditor explicitly reserved in its original proof of claim the right to seek a deficiency should the sale of its collateral fail to make it whole. *In re Spurling,* 391 B.R. 783, 786 (Bankr. E.D. Tenn. 2008) (listing cases).

13. After considering the split in authority, the Court agrees with the majority that an amended claim filed after the bar date to assert an unsecured deficiency claim after collateral is liquidated does not state a new claim where, as here, the right to a deficiency claim is grounded on the same facts and transaction reflected in the original proof of claim, namely, in this instance, the Contract, which was, in fact, attached to both POC 2-1 and POC 2-2, belying that the claims asserted therein stem from the same transaction.

4

*See e.g., In re Breaux*, 410 B.R. at 239. The Court finds particularly convincing the reasoning expressed in *In re Spurling,* that

> '[t]he word claim…refers to the *substance of the obligation*, rather than to any mere attribute of it.' The substances of the four creditors' obligations in the case at bar have never changed: each amended claim has its source in the same contract and indebtedness described in its predecessor proof of claim. The only difference is that the original proofs of claim are secured claims while the amended ones are unsecured. As the Sixth Circuit noted, the bankruptcy status of the claim is only an 'attribute' that should not block an otherwise proper amendment of the claim.

*In re Spurling,* 391 B.R. at 787 (emphasis in original) (citing *In re Ashland Steel Co.,* 168 F. 679, 681 (6th Cir. 1909)).

14. Ultimately, this Court is persuaded by the approach adopted by the Sixth Circuit Court of Appeals which "considers the underlying transaction or occurrence, within the meaning of Rule 15, to be the original transaction between the debtor and the creditor in which the debt was established. The debt is composed of the obligation and the amount due. Other features surrounding the debt, such as whether it is secured or not, are incidental and as to them claims may be amended without incurring the objection that the creditor is erecting a new claim." *Id.* at 788.

15. In this case, POC 2-2 clearly relates back to the transaction detailed in POC 2-1, the Contract out of which the indebtedness and the security interest in the Vehicle arose. In fact, as mentioned, the very same Contract was attached to both proofs of claim. Here, "the right to a deficiency claim, although not triggered at the time of the filing of the original proof of claim, is inherent in the facts and events asserted in the original proof of claim." *See In re Breaux,* 410 B.R. at 240.

16. The Court is particularly sensitive to the dilemma of secured creditors, recognizing that "at the time a secured creditor must file its claim, the creditor may not know the real

5

value of its security or even whether it still exists. The creditor only knows that, according to its documents, the creditor is *entitled* to some security for its debt. Such a creditor may even be incapable of accurately computing the secured and unsecured portions of its debt." *In re Spurling,* 391 B.R. at 788 (emphasis in original).

17. Ultimately, "[t]here is no law or policy…that requires creditors filing secured claims to state the contingencies under which they might be partially unsecured or to guess how unsecured they might eventually be." *Id.*

18. Having determined that POC 2-2 relates back to timely POC 2-1, the Court must also consider whether any circumstances would make it inequitable to allow the amendment. *See In re Channakhon,* 465 B.R. 132, 141 (Bankr. S.D. Ohio 2012). Debtor has not offered any basis for this Court to conclude that allowing the amendment would be inequitable.[2]

19. Accordingly, based on the foregoing, the Objection is OVERRULED.

_____
Ashely M. Chan
United States Bankruptcy Judge

---

[2] As mentioned, under the Amended Plan, unsecured creditors are to receive 100% payment of their claims, and Debtor appears to have sufficient non-exempt property the value of which would cover Claim 2-2 without impacting the distribution to other creditors. In fact, Debtor has not alleged in the Objection that allowing the amended claim would render the Amended Plan infeasible or would prevent other unsecured creditors from receiving 100% payment of their claims. Even had Debtor argued that allowing POC 2-2 would prejudice other unsecured creditors, the Court notes that "a decreased dividend alone is insufficient to prohibit an amendment because 'it is not whether such prejudice exists [that matters], but whether the prejudice is undue or substantial.' In *Outdoor Sports*, the bankruptcy court noted that 'substantial or undue prejudice involves an irrevocable change in position or some other detrimental reliance on the status quo.'" *In re Channakhon,* 465 B.R. 132, 145 (Bankr. S.D. Ohio 2012). Here, "[t]here is no evidence of any such irrevocable change in position or detrimental reliance on the part of the creditors here." *See id.*